# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

SUREFIL, LLC, and
SUREFIL PROPERTIES, LLC,

        Debtor.

_____/

VIVA BEVERAGES, LLC,

        Plaintiff,

v.

SUREFIL, LLC,

        Defendant.

_____/

Case No. 09-06914
Chapter 11
Jointly Administered
Hon. Jeffrey R. Hughes

Adv. Proc. No. _____

## VERIFIED COMPLAINT

Viva Beverages, LLC ("Viva"), by its counsel, Jaffe Raitt Heuer & Weiss, P.C., brings this verified complaint ("Verified Complaint") to recover: (i) its equipment from the Debtor, and (ii) damages incurred by Viva as a result of the Debtor's continuing breach its contractual obligations to Viva. In support of the Verified Complaint, Viva states as follows:

### Jurisdiction and Venue

    1.    The Court has jurisdiction over the subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

    2.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

    3.    This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (K) and (O).

1853867.03

**Background**

4. Surefil, LLC (the "Debtor") filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Bankruptcy Code") on June 8, 2009 (the "Petition Date"). The Debtor's bankruptcy case is being jointly administered with the bankruptcy case of its affiliate Surefil Properties, LLC [Case No. 09-06916], which case was also commenced on the Petition Date.

5. The Debtor is operating its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code and this Court's Definitive Order for Debtor-In-Possession [Doc. No. 10] (the "Definitive Order") dated June 9, 2009.

A. EXECUTION OF THE MANUFACTURING AND SUPPLY AGREEMENT.

6. Viva is a beverage company that markets and distributes beverages including, but not limited to, "Quick Energy" and "Viva," which are single-shot energy drinks distributed and sold both in the United States and internationally (collectively, the "Energy Drink").

7. The Debtor is a contract manufacturer of liquid fill plastic bottle consumer products such as shampoo, conditioner, mouthwash, bubble bath, body wash and energy drinks.

8. On August 21, 2008, Viva and the Debtor executed a certain Manufacturing and Supply Agreement whereby the Debtor agreed to manufacture the Energy Drink for Viva at its facility in Kentwood, Michigan (the "Supply Agreement"). *See* Supply Agreement attached hereto as Exhibit A.

9. Pursuant to the Supply Agreement, Viva would supply the raw materials for the Energy Drink to the Debtor for manufacturing. Viva also provided the bottles, bottle caps, labels and packaging to the Debtor.

10. Additionally, as set forth in the Supply Agreement, Viva and the Debtor agreed on a set of quality standards for manufacturing the Energy Drink, including standards for composition, product safety assurance, manufacture and quality control of the Energy Drink and the labeling, fill amount, and bottle cap torque (collectively, the "Specifications").

11. Because the Debtor did not have the equipment necessary to comply with the Supply Agreement, and in order to facilitate the Debtor's ability to fulfill Viva's requirements under the Supply Agreement, Viva provided the Debtor with initial funding in the amount of $115,000 (the "Initial Funding") to purchase certain production equipment on Viva's behalf to be used by the Debtor in producing the Energy Drink (the "Pre-Petition Equipment").

### B. SUREFIL'S BANKRUPTCY AND THE BAILMENT AGREEMENT.

12. On the Petition Date, ten months after execution of the Supply Agreement, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

13. The Definitive Order authorizes the Debtor to carry on its business in the ordinary course until further order of the Court.

14. On October 3, 2009, Viva agreed to provide the Debtor with additional funding in the amount of $79,242 (the "Additional Funding") to purchase certain additional equipment (the "Post-Petition Equipment" and collectively with the Pre-Petition Equipment, the "Equipment") pursuant to a certain Bailment Agreement (the "Bailment Agreement"). *See* Bailment Agreement attached hereto as Exhibit B.

15. The Bailment Agreement contemplated, among other things, that Viva would purchase the Post-Petition Equipment with the Additional Funding and allow the Debtor to use all of the Equipment in order to fulfill its obligations under the Supply Agreement. *Id.* at ¶ E.

1853867.03

16. Pursuant to the Bailment Agreement, the Debtor acknowledged that all of the Equipment was owned solely by Viva. *Id.* at ¶ 3.

17. The Debtor also acknowledged and agreed in the Bailment Agreement that the Energy Drink "shall at all times comply with the Specifications (as defined in the Supply Agreement)." *Id.* at ¶ 7.

18. Finally, the Bailment Agreement contained a termination provision (the "Termination Provisions") which provides:

> TERMINATION. This Agreement may be terminated for any reason and at anytime by mutual agreement of the parties, immediately upon the expiration or termination of the Supply Agreement, **or unilaterally by VIVA on 48 hours prior written notice**. **Upon termination of this Agreement for any reason or failure of Surefil to comply with the terms of the Supply Agreement, the Equipment shall be made immediately available to VIVA FOB Surefil's premises**. It is expressly understood and agreed by and between the parties that the termination of this Agreement shall not in any ways affect Surefil's acknowledgment that the Equipment is the sole property of VIVA. **A termination of this Agreement for any reason shall also automatically terminate the Supply Agreement.**

*See* Bailment Agreement, ¶ 10 (emphasis added).

19. On October 29, 2009, the Debtor filed the Debtors' Motion for Approval of Bailment Agreement [Doc. No. 101] (the "Motion") wherein the Debtor requested that this Court enter an order authorizing the Debtor to enter into the Bailment Agreement with Viva.

20. On November 3, 2009, The Huntington National Bank acknowledged that the Equipment "is not subject to the security interest granted to The Huntington National Bank in the equipment of Surefil, LLC." *See* Acknowledgement attached hereto as Exhibit C.

21. On November 18, 2009, the Court entered its Order Re: Debtor's October 29, 2009 Motion – Bailment Agreement [Doc. No. 111] which modified the Definitive Order to the

extent necessary to give the Debtor the authority as a debtor in possession to enter into the Bailment Agreement.

      **C.    SUREFIL'S BREACH OF THE QUALITY STANDARDS AND VIVA'S TERMINATION OF THE BAILMENT AGREEMENT.**

22.    In early January, 2010, Viva discovered that the Debtor had introduced foreign materials into the Energy Drink and otherwise failed to maintain quality control with respect to the Energy Drink, thereby contaminating the Energy Drink (the "Contamination").

23.    On January 22, 2010, as a result of the discovery of the Contamination, Viva served notice to the Debtor of its rejection of the contaminated product pursuant to Section 9.02 of the Supply Agreement and MCL § 440.2601 (the "Notice"). *See* Notice of Rejection of Defective Products attached hereto as Exhibit D.

24.    The Notice advised the Debtor that Viva was exercising its rights under the Termination Provision to unilaterally terminate both the Bailment Agreement and the Supply Agreement and demanded that the Debtor comply with its obligations under the Bailment Agreement to, among other things, immediately make all of Viva's Equipment "immediately available to Viva, FOB Surefil's premises." *Id.* at ¶ 2.

25.    Once the Supply Agreement was terminated, Viva had no obligation to provide the Debtor with an opportunity to cure its breach under the Supply Agreement. Nevertheless, the Debtor has failed to cure such breach in a timely manner.

26.    On January 29, 2010, Viva sent a representative to the Debtor's premises to, among other things, inspect and remove the Equipment. The Debtor refused to allow Viva to inspect or remove any of the Equipment.

27.    Thereafter, on February 1, 2010, Viva, through its counsel, renewed its request to the Debtor to allow it to inspect and remove the Equipment. In addition, Viva requested that the

Debtor confirm that it was not using the Equipment, as required under the Bailment Agreement. The Debtor failed to respond to Viva's request.

28. Viva is justifiably concerned with the Debtor's continued failure to comply with its obligations under the Supply Agreement and the Bailment Agreement.

## Count I – Claim and Delivery

29. Viva repeats and realleges the allegations contained in paragraphs 1 through 28 of its Verified Complaint as if fully set forth herein.

30. The Equipment is property of Viva.

31. Viva is entitled to repossession of its Equipment under the Bailment Agreement.

32. Viva has demanded that the Debtor make the Equipment immediately available at the Debtor's premises for removal by Viva, which the Debtor has refused or otherwise failed to do.

33. The Debtor's failure to voluntarily surrender the Equipment constitutes an unlawful retention of the Equipment and a continuing breach of its obligations under the Bailment Agreement.

34. Given the Debtor's considerable resistance and obstruction with respect to Viva's attempts to obtain the Equipment in accordance with the Bailment Agreement, Viva is justifiably apprehensive that the Equipment will not be timely returned to Viva and, moreover, may be damaged.

## Count II – Breach of Contract

35. Viva repeats and realleges the allegations contained in paragraphs 1 through 34 of its Verified Complaint as if fully set forth herein.

36. The Supply Agreement and the Bailment Agreement constituted valid contracts between Viva and the Debtor.

37. The Debtor breached the contracts post-petition by, among other things, failing to manufacture the Energy Drink in accordance with the Specifications and, thereafter, failing to make the Equipment immediately available at the Debtor's premises for removal by Viva.

38. As a result of the Debtor's continuing breach, Viva has incurred and will continue to incur damages for which it is entitled to be compensated by the Debtor as an administrative expense.

39. The Debtor's post-petition damages will likely adversely affect the recovery by the Debtor's unsecured creditors in these cases, if any, but may be mitigated by the Debtor immediately surrendering the Equipment to Viva.

WHEREFORE, Viva requests that this Court:

A.  Enter judgment in favor of Viva and against the Debtor, determining that Viva is entitled to possession of the Equipment;

B.  Order the Debtor to permit Viva or its designated representative immediate access to inspect and remove the Equipment;

C.  Order the Debtor to compensate Viva for damages it has occurred as a result of the Debtor's continuing breach of the Supply Agreement and the Bailment Agreement; and

D.  Award such other relief as the Court deems just and equitable.

Respectfully submitted by,

**JAFFE RAITT HEUER & WEISS, P.C.**

By:   Judith Greenstone Miller
Judith Greenstone Miller (P29208)
Michael S. Khoury (P34413)
Paul R. Hage (P70460)
Attorneys for Viva Beverages, LLC
27777 Franklin Road, Suite 2500
Southfield, Michigan 48034
Phone: (248) 351-3000
Facsimile: (248) 351-3082
jmiller@jaffelaw.com
mkoury@jaffelaw.com
phage@jaffelaw.com

Dated: February 2, 2010

1853867.03

## **VERIFICATION**

      I, Daniel Lutz, declare that the facts contained in this Verified Complaint are true to the best of my information, knowledge and belief.  If called, I am competent to testify to the matters contained in the Verified Complaint.

                                      **VIVA BEVERAGES, LLC**

                                      By: _____
                                                  Daniel Lutz

                                      Its:   Vice President of Operations

Subscribed and sworn to before me
this 2 day of February, 2010.

_____

Notary Public
Oakland County, Michigan
My Commission Expires: _____

1853867.03